United States District Court
Southern District of Texas
**ENTERED**
October 01, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KATIE MARIE COLA, ET AL., | § § § | |
| Plaintiffs. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:19–CV–00199 |
| THE DOW CHEMICAL COMPANY, ET AL., | § § § § | |
| Defendants. | § § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Plaintiffs' Motion to Remand and Memorandum of Law in Support ("Motion to Remand"). *See* Dkt. 14. After reviewing the Motion to Remand, the response, the supplemental briefing supplied by both parties, and the applicable law, I **RECOMMEND** that the Motion to Remand be **GRANTED**.

### BACKGROUND

This is a wrongful death lawsuit arising from the death of John Cola ("Cola"), who is survived by his wife and four adult children ("Plaintiffs"). Originally filed in the 239th Judicial District Court of Brazoria County, Texas, the lawsuit alleges that a Railserve, Inc. ("Railserve") train driven by Leovardo Garcia Mata ("Mata") collided with a tractor-trailer driven by Cola, crushing the tractor-trailer and killing Cola. The accident occurred at a plant operated by The Dow Chemical Company ("Dow Chemical") near Freeport, Texas.

In Plaintiffs' Third Amended Petition filed in state court, Plaintiffs allege that Cola's fatal injuries were avoidable but caused by: (i) the negligence of Dow Chemical and

Railserve, both of whom failed to provide Cola with a safe work place and do what a reasonably prudent premises owner and railroad operator would have done under the same or similar circumstances; (ii) a defective REAct device (Railserve Emergency ACTion), which is a patented safety device manufactured and designed by BWI Eagle, Inc. ("BWI Eagle"); and (iii) the negligence of Mata.

According to the Third Amended Petition, Dow Chemical implemented safety rules for Railserve to follow while operating railcars at the Dow Chemical plant. These safety rules required Railserve and its rail crew to stop all locomotive and railcars a certain distance from a blind crossing. A blind crossing is "a crossing that has no visibility to oncoming vehicular traffic 2 car lengths prior to entering a crossing." Dkt. 1-3 at 79. "Once Railserve's rail crew has confirmed that all traffic is clear at a blind crossing, Railserve is then allowed to move its locomotive and railcars safely across the blind crossing." *Id.* at 80. Plaintiffs specifically allege that Mata, along with Railserve and Dow Chemical, "failed to exercise reasonable care and take proper precautions to ensure the Chlorine Road railroad crossing would be clear of vehicular and pedestrian traffic so that the blind shove could proceed through the blind crossing safely." *Id.* at 84.

BWI Eagle timely removed the lawsuit to the United States District Court for the Southern District of Texas (Galveston Division) on the basis of diversity jurisdiction. Plaintiffs are Texas citizens. Defendants Railserve, BWI Eagle, and Dow Chemical (collectively, the "Corporate Defendants") are all citizens of states other than Texas. Although Mata is a Texas citizen, the Corporate Defendants contend that Mata has been improperly joined in this lawsuit for the sole purpose of defeating diversity. Plaintiffs

2

strongly disagree and have asked me to remand this case to the state district court in Brazoria County.

## LEGAL STANDARD

Motions to remand are governed by 28 U.S.C. § 1447(c), which provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." A party may remove any civil action from state court to a federal district court that has original jurisdiction. *See* 28 U.S.C. § 1441(a). A district court may exercise removal jurisdiction over two types of cases: those that present a federal question and those in which there is diversity of citizenship. *See* 28 U.S.C. §§ 1331–1332. Under diversity jurisdiction, district courts have original jurisdiction over all civil actions that are between citizens of different states and involve an amount in controversy in excess of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). Removal is only proper in such a case, however, if there is "complete diversity." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016). That means "if any plaintiff is a citizen of the same State as any defendant, then diversity jurisdiction does not exist." *Id.*

The improper joinder doctrine[1] provides a narrow exception to the rule that parties must be completely diverse for federal courts to exercise subject matter jurisdiction. *See McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005). "If a party has been improperly joined, . . . the lack of complete diversity will not prevent a defendant from

---

[1] The Fifth Circuit has "adopt[ed] the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,'" but "there is no substantive difference between the two terms." *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004).

3

removing a case to federal court." *Wolf v. Deutsche Bank Nat'l Tr. Co. for Am. Home Mortg. Inv. Tr. 2007-1*, 745 F. App'x 205, 207 (5th Cir. 2018). When a "plaintiff improperly joins a non-diverse defendant, . . . the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant." *Flagg*, 819 F.3d at 136 (collecting cases). *See also Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018) ("If a party is improperly joined, a court may disregard the party's citizenship for purposes of determining subject matter jurisdiction.").

To demonstrate improper joinder, the removing defendant must demonstrate either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood*, 385 F.3d at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). Actual fraud has not been asserted here. At issue, therefore, is the second situation. "To establish that a non-diverse defendant has been [improperly] joined to defeat diversity jurisdiction, the removing party must prove . . . that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the [in-state] defendant." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999) (emphasis added). *See also Smallwood*, 385 F.3d at 573 ("[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state [or nondiverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state [or nondiverse] defendant.").

To determine whether a defendant is improperly joined under the second prong, the district "court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573. *See also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016) ("Our precedent is clear: A federal court must apply the federal pleading standard" in deciding the improper joinder issue). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573. To pass muster under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678.

In deciding whether improper joinder has been established, a district court must "resolve all contested factual issues and ambiguities of state law in favor of the plaintiff [and remand]." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). The removing party bears the heavy burden of proving improper joinder. *See Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011).

## LEGAL ANALYSIS

To begin the analysis, we turn the clock back more than 100 years to when the United States Supreme Court first addressed the applicability of the improper joinder doctrine to train crew members in *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146,

5

153–54 (1914). In *Cockrell*, the administrator of an estate, a Kentucky citizen, sued a Virginia railroad company, an engineer, and a foreman, for negligently killing a pedestrian at a railroad crossing. *See id.* at 149–50. The engineer and foreman were both employees of the railroad company and citizens of Kentucky. *See id.* The railroad company removed the case to federal court on the ground that the allegations of negligence against its employees were improper and should be ignored, thus establishing federal jurisdiction over the diverse parties. *See id.* at 151.

Noting that, under Kentucky law, employees could be jointly held liable with their employer for negligent acts committed by the employees, the Supreme Court found the plaintiff's allegations of wrongdoing "stated a good cause of action against the resident defendants." *Id.* at 152–53. "As thus stated the case was not removable, the joinder of the resident defendants being apparently the exercise of a lawful right." *Id.* at 153. The Supreme Court also observed: "As they admittedly were in charge of the movement of the train, and their negligence was apparently the principal matter in dispute, the plaintiff had the same right, under the laws of Kentucky, to insist upon their presence as real defendants as upon that of the railway company." *Id.*

In more recent years, the Fifth Circuit has decided several cases involving alleged improper joinder of railroad crew members. In *Travis*, the mother of a driver killed when struck by a train at a railroad crossing brought a wrongful death lawsuit in Mississippi state court against the railroad and the engineer who was operating the train at the time of the accident. *See* 326 F.3d at 646. The plaintiff was a Mississippi resident, the railroad was an Illinois citizen, and the engineer was a Mississippi resident. *See id.* The defendants

removed the case to federal court, arguing that the engineer had been improperly joined. *See id.* In setting forth the applicable legal standard, the Fifth Circuit noted:

> The question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham, is not colorable, and is not fraudulent in fact or in law.

*Id.* at 647 (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176–77 (5th Cir. 1968)). The Fifth Circuit went on to conclude that joinder was appropriate and remand required because, under Mississippi law, the train engineer "owed a duty to exercise reasonable care to avoid injuring [the decedent] at the railroad crossing." *Id.* at 649.

One year after *Travis*, the Fifth Circuit handled another case addressing the alleged improper joinder of a train crew member that is strikingly similar to the present case. *See McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329 (5th Cir. 2004). In *McKee*, an automobile passenger filed a Mississippi state court lawsuit after a freight train struck the car he was riding in at a railroad crossing. *See id.* at 331. The plaintiff was a Mississippi resident. *See id.* The defendants in the case included the railroad company (a Missouri citizen for diversity purposes), the conductor (a Mississippi citizen), and the train engineers (all citizens of Mississippi). *See id.* The defendants removed the case to federal court, arguing that the improper joinder doctrine prevented the court from considering the citizenship of the individual train crew members for diversity purposes. *See id.* In response, the plaintiff asked that the case be remanded to state court, claiming that the inclusion of the train crew members in the case destroyed diversity and divested the federal court of jurisdiction. *See*

7

*id.* Noting the similarities of the facts alleged to *Cockrell* and *Travis*, the Fifth Circuit found that the railroad employees had not been improperly joined as defendants under Mississippi law:

> [The plaintiff] had potentially viable claims against the train crew and therefore there was a reason for the crew to be defendants in the case. Further, [plaintiff] did not have the burden of proving her claims, rather [the railroad company] had the burden to prove the non-diverse defendants were fraudulently joined

*Id.* at 336.

Given this well-defined legal precedent, it is incumbent on the Corporate Defendants trying to establish improper joinder to demonstrate that there is "no possibility that the plaintiff would be able to establish a cause of action" against Mata. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). Determining whether there is a plausible cause of action against Mata, a railroad employee allegedly operating a railcar negligently, requires me to look at Texas law. Thankfully, the answer is not complicated. The Texas Supreme Court has explored the circumstances in which individual liability may be imposed on a corporation's employee for committing negligent acts in the course and scope of his employment. *See Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). Although "a corporate officer or agent can be liable to others . . . for his or her own negligence[,] . . . individual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty." *Id.* By way of example, the *Leitch* court observed that an employee who causes an automobile accident may be held individually liable along with his employer because the employee "owes a duty of reasonable care to the general public regardless of whether the

auto accident occurs while driving for the employer." *Id.* (citing *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596–97 (Tex. 1987)). *See also Metzger v. Gambill*, 37 S.W.2d 1077, 1079 (Tex. Civ. App.—Dallas 1931, writ ref'd) (it is well established that "a duty rests upon every driver of an automobile to exercise ordinary care in the operation of his car so as not to endanger the safety of others").

After *Leitch*, it is "clear that a vehicle operator working in the scope of his employment owes an independent duty to the general public to use reasonable care in operation of [any] vehicle." *Andrade v. Terminal Link Tex., LLC*, No. H-09-2214, 2009 WL 5195974, at *3 (S.D. Tex. Dec. 18, 2009). In *Andrade*, the district court remanded a case to state court where the injured plaintiff had alleged that a corporate employee "was operating a Yard Pencil Machine in an attempt to place a container in [the plaintiff's] truck," and the Yard Pencil Machine hit the plaintiff's truck, injuring the plaintiff. *Id.* at *1. The court found the improper joinder doctrine inapplicable because "when an employee is operating a vehicle in the scope of employment—as Beck was in this instance—the employee owes an independent duty to others to use reasonable care in operation of the vehicle." *Id.* At the end of the day, it makes no difference to the independent duty analysis whether the vehicle operated by the employee is a train, plane, automobile or Yard Pencil Machine. Logic dictates this result. If an employee who causes an auto accident in the course and scope of his employment may be held individually liable for his actions under Texas law, it intuitively follows that a railroad employee whose

negligence causes a train collision may also be held individually liable for his actions.[2] Because Mata, as the train operator, owed an independent duty to Cola to use reasonable care in his operation of the train and the Third Amended Petition alleges that Mata breached that duty, Mata is a proper defendant in this action. *See, e.g., Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002) ("a corporate agent is personally liable for his own fraudulent or tortious acts"); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984) ("A corporation's employee is personally liable for tortious acts which he directs or participates in during his employment.").

An opinion from a district court in the Eastern District of Texas helps guide my analysis. *See Hampton v. Union Pac. R.R. Co.*, 81 F. Supp. 2d 703, 707 (E.D. Tex. 1999). In *Hampton*, the plaintiff, a Texas resident, sued Union Pacific Railroad Company, a Delaware corporation, in Texas state court for injuries he sustained when the truck he was driving collided with a Union Pacific train. *See id.* at 704. The plaintiff added the train engineer, a Texas resident, as a defendant to the state court lawsuit, alleging that the train engineer was individually at fault for the accident. *See id.* The defendants removed the case to federal court, claiming that the plaintiff added the train engineer solely to defeat diversity jurisdiction. *See id.* at 707. In finding that the plaintiff properly joined the train engineer, the district court noted: "It is not fraudulent joinder to sue a corporate employee

---

[2] At oral argument, the Corporate Defendants argued that no independent duty arises in the instant case because the accident occurred on an industrial site located on private property as opposed to a public area. I find this to be a distinction without a difference. As a practical matter, it is completely irrelevant whether the accident takes place on private property or public property. In either case, all drivers have a duty to exercise ordinary care in operating their vehicles "so as not to endanger the safety of others." *Metzger*, 37 S.W.2d at 1079.

in his individual capacity for actions taken in the scope of his employment." *Id.* Utilizing the same logic and resolving all doubts in favor of Cola, as I must, I conclude that Cola has sufficiently established, for the purposes of the Motion to Remand, that "there is arguably a reasonable basis for predicting that [Texas] law might impose liability" given the facts as alleged. *Travis*, 326 F.3d at 647. *See also Martin v. Norfolk & W. Ry. Co.*, 43 F.2d 293, 296 (4th Cir. 1930) (holding that a train conductor and brakeman were not fraudulently joined in a railroad crossing accident because the alleged breach of their duty to provide a lookout would state a cause of action against them); *Gilbert v. Norfolk S. Ry. Co.*, No. 3:06CV1573, 2007 WL 2084342, at *3 (N.D. Ohio Jul. 19, 2007) (remanding a wrongful death case involving a railroad crossing accident because the defendant failed to establish the railroad crew was improperly joined as a defendant under Ohio law, which provides that a crew member owes a duty of ordinary care to the general public). Because, as discussed above, Mata is potentially liable under Texas law for operating the train that collided with Cola's vehicle, the improper joinder doctrine is inapplicable and I must remand the case to state court.

The Corporate Defendants contend that removal under the improper joinder doctrine is appropriate because Plaintiffs' allegations against Mata as set forth in the Third Amended Petition would not survive a Rule 12(b)(6) analysis. Specifically, the Corporate Defendants argue that "Plaintiffs allege no specific facts regarding any purported conduct of Mata, do not allege that Mata owed or breached any independent duty to Cola (or anyone else), and do not allege that any of Mata's acts caused Plaintiffs any damages." Dkt. 27 at 6. In making this argument, the Corporate Defendants note that there are only six

11

references to Mata in the entire 17-page Third Amended Petition, and the specific allegations against Mata in the cause of action section of the live pleading are at the bottom of a list of the ways in which Dow Chemical and Railserve breached their duties to Plaintiffs. These arguments are well taken, and there is no doubt that Plaintiffs' allegations against Mata could certainly have been pled with more specificity and clarity. That being said, "[t]o survive dismissal, a plaintiff must plead enough facts to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014) (internal quotation marks and citations omitted). When conducting the Rule 12(b)(6) inquiry, I must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)). Although it is a close call, I believe that Plaintiffs have met the requisite pleading standard, especially in light of the Fifth Circuit's admonition that Rule 12(b)(6) motions are "viewed with disfavor and [are] rarely granted." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (internal quotation marks omitted). Plaintiffs have alleged facts which, if believed, suggest that Mata was instrumental in causing Cola's wrongful death because Mata was driving the locomotive that crashed into Cola's vehicle while failing to adhere to company rules about approaching blind crossings.

At a bare minimum, it is far from certain that Plaintiffs would be precluded from recovering monetary damages against Mata. To the extent there is any uncertainty

whatsoever, I must "tip the scales in favor of remand." *Aguilar v. Wal-Mart Stores Tex., LLC*, No. 1:14-CV-245, 2015 WL 11023492, at *8 (E.D. Tex. Jan. 6, 2015). *See also African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014) ("We repeat for emphasis that any contested issues of facts and any ambiguities of state law must be resolved in favor of remand.") (internal quotation marks and citation omitted). Because the Corporate Defendants have not met their heavy burden of demonstrating that Plaintiffs have no possibility of recovery against Mata, BWI Eagle's removal of this action was improper and remand is appropriate.

## CONCLUSION

For the reasons stated above, I **RECOMMEND** that the Motion to Remand be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Galveston, Texas, this 1st day of October, 2019.

                                          ANDREW M. EDISON
                                  UNITED STATES MAGISTRATE JUDGE